| | |
|---|---|
| AMSURG NAPLES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-0429 |
| ) | Judge Echols |
| KEITH P. HUSSEY, STEVEN A. ) | |
| MECKSTROTH, JOSEPH G. SPANO, ) | |
| SCOTT L. WIESEN, GUY ) | |
| WINZENRIED and THE ENDOSCOPY ) | |
| CENTER OF NAPLES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This is a commercial litigation case which was removed by Defendants from state court to this Court based upon diversity jurisdiction. Pending before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 8). That motion has been fully briefed by the parties.

### I. FACTUAL BACKGROUND

Plaintiff, AmSurg Naples Inc. ("AmSurg") is a Tennessee corporation. The individual Defendants are all medical doctors who reside and work in Florida and specialize in gastroenterology. Defendant, The Endoscopy Center of Naples, Inc. ("ECN"), was a Florida corporation, with its only place of business in Naples, Florida.

ECN, and its shareholders, Defendants Keith P. Hussey ("Dr. Hussey"), Steven A. Meckstroth ("Dr. Meckstroth"), Joseph G. Spano (Dr. Spano") and Scott L. Wiesen ("Dr. Wiesen") (collectively "the individual Partnership Defendants") entered into a Limited Partnership Agreement with AmSurg to form a Tennessee limited partnership (the "Partnership") pursuant to the Tennessee Revised Limited Partnership Act. AmSurg was the sole general partner and ECN was the sole

limited partner of the Partnership. The sole purpose of the Partnership was to operate an endoscopy medical center ("the Center") in Naples, Florida with Amsurg having as 60% and ECN have a 40% interest in the Center. The Center was staffed exclusively with Florida doctors and cared for Florida patients.[1]

Upon formation, the Partnership filed a Certificate of Domestic Limited Partnership with the Tennessee Secretary of State identifying its registered office and agent in Tennessee and indicating that its principal place of business was in Tennessee. The Partnership Agreement contained an arbitration clause which indicated that disputes "relative to interpretation of the provisions of this Agreement" were subject to binding arbitration in Fort Meyers, Florida, but all disputes were to be governed by Tennessee law.

Contemporaneous with the formation of the Partnership in 1998, Amsurg and the individual partnership Defendants entered into an Asset Purchase Agreement whereby AmSurg purchased a 60% interest in the Center from ECN. AmSurg paid $4,479,504.00 to the Partnership for its interest in the Center. ECN paid $2,986,336 to the Partnership for its 40% interest in the Center.

The Limited Partnership Agreement and the Asset Purchase Agreement both contain non-compete provisions restricting the individual Partnership Defendants from competing with the Partnership. Specifically, the non-compete provisions prohibited AmSurg, the individual Partnership Defendants and ECN from developing, directly or indirectly owning, or otherwise having a financial interest in a competing business within twenty-five miles of the Center until the later of five years from the creation of the Partnership or one year after the would-be competitors' withdrawal from the Partnership.

---

[1] Defendant Guy Winzenried ("Dr. Winzenried") was hired by the Center to perform quality control and allegedly treated patients at the Center. However, he did not sign the Partnership Agreement. Accordingly, references to the "individual Partnership Defendants" in this Memorandum is a reference to those physicians who signed and agreed to the Partnership Agreement and does not include Dr. Winzenried.

2

The Partnership operated the Center from November 1998 until January 2008. AmSurg claims that the demise of the Center began in mid-2004 when one or more of the individual Partnership Defendants became dissatisfied with the Partnership Agreement and began contemplating plans to open a new surgery center in competition with the Center. AmSurg alleges that the individual Partnership Defendants and Dr. Winzenried then engaged in a conspiracy to circumvent the non-compete provisions.

Specifically, AmSurg alleges the conspiracy began when two of the individual Partnership Defendants withdrew from ECN, but the remaining individual Partnership Defendants continued to compensate them through a share of the Center's facilities fees disguised as the purchase of their interests. The individual Partnership Defendants who withdrew from ECN then fraudulently induced AmSurg to purchase their interests. Moreover, AmSurg claims that Dr. Winzenried, who was fully aware of the Partnership and non-compete agreements (having previously considered joining the Partnership), opened Premier Endoscopy Center, LLC ("Premier") in June 2006 to develop and operate a surgery center in competition with the Center. AmSurg alleges Premier was developed in conjunction with one or more of the individual Partnership Defendants and, in fact, Dr. Meckstroth, a member/manager of Premier, is its registered agent. AmSurg further alleges the individual Partnership Defendants openly solicited Center employees to join Premier and all of the individual Partnership Defendants have begun performing medical procedures at Premier. On January 9, 2008, ECN was voluntarily dissolved, leaving AmSurg in sole control over the Partnership and the Center.

Based on these allegations, AmSurg filed suit against ECN and the individual Partnership Defendants for breach of fiduciary duties, breach of contract, and fraud. Additionally, AmSurg asserts claims against all Defendants for civil conspiracy, aiding and abetting breach of fiduciary

duties, interference with contract, and interference with business relationships. In response, Defendants filed the pending motion to dismiss for lack of personal jurisdiction.

In support of their motion to dismiss, Defendants assert that none of them had any significant contact with Tennessee and certainly no contacts which would allow for personal jurisdiction in this Court. AmSurg claims that during the existence of the Center, ECN and its shareholders had substantial, continuous and systemic contacts with AmSurg in connection with the operation and management of Partnership business.

## II. STANDARD OF REVIEW

The burden to establish the jurisdiction of the Court is on the Plaintiff. Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989); Inter-City Prod. Corp. v. Willey, 149 F.R.D. 563, 570 (M.D. Tenn. 1993). In considering a Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court need not hold an evidentiary hearing, but may rely solely on the pleadings, affidavits, and other written submissions of the parties. See Third Nat'l Bank, 882 F.2d at 1089. If the Court proceeds in that manner, the burden on the Plaintiff is relatively slight, as the Plaintiff must make only a prima facie showing of jurisdiction with the Court considering the facts in the light most favorable to the Plaintiff. Id.

## III. ANALYSIS

In order for this Court to have personal jurisdiction over the Defendants, the Plaintiff must show the Defendants have sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Young v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). Minimum contacts exist where the Defendants purposefully avail themselves of the privilege of conducting activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Defendants who invoke the benefit and protections of the state's laws "should

4

reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be either general or specific. "General jurisdiction is established 'when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.'" Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 213, 218 (6th Cir. 2006)(citation omitted). Specific jurisdiction "'subjects the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum.'" Id. (citation omitted). AmSurg argues that this Court has both general and specific jurisdiction over the Defendants in this case.

## A. **General Jurisdiction**

"A federal court has general jurisdiction when the defendant's contacts with the forum state are 'substantial' and 'continuous and systematic,' so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contact with the state." Young, 324 F.3d at 417-18.

AmSurg presents very little to support its argument that this Court has general jurisdiction over Defendants. It relies upon the Declaration of Omelio Rodriguez ("Rodriguez"), the Regional Vice President of AmSurg. In that Declaration, Rodriguez asserts that he has had "many hundreds, if not thousands of communications and interactions with ECN and [the individual Partnership] Defendants on AmSurg's behalf regarding the conduct and operation of the . . . Partnership" and claims those contacts "occurred both within and without Tennessee." (Rodriguez Decl. ¶ 8). He also asserts two of the four participants on the Partnership's operating board were individual Partnership Defendants and in such capacity participated in at least quarterly meetings. He also claims each of the individual Partnership Defendants were involved in the operations and management of the Center where they performed surgical procedures.

5

Rodriguez' Declaration may be more instructive on the question of general jurisdiction for what it does not say than for what it says. While Rodriguez speaks about "hundreds, if not thousands of communications" he was involved in with AmSurg and the individual Partnership Defendants, he wholly fails to acknowledge that he apparently has been a Florida resident for over twenty years and his work for the Center and the Partnership was done in Florida.. He fails to indicate what percentage (if any) of his conversations and interactions with the individual Partnership Defendants occurred within, as opposed to outside, of Tennessee. While Rodriguez states that two of the individual Partnership Defendants were on the operating board and participated in quarterly meetings of the Partnership, he does not even suggest that those meetings occurred in Tennessee. As for Rodriguez's assertion that the individual Partnership Defendants were involved in the management and operations of the Center on a daily basis and performed surgical procedures there, it suffices to note that the Center in question was located in Naples, Florida.

The lack of ties to Tennessee is supported by the Declarations which Defendants have filed in contesting personal jurisdiction. The Declarations filed by the individual Defendants (including Dr. Winzenried), show no material contacts with Tennessee. According to their respective Declarations, the individual Defendants reside and work in Naples, Florida. Each has traveled to Tennessee between one and three times in their lifetimes, but never for professional or business reasons, other than for medical education or medical conferences.[2] None of the Defendants have conducted business in Tennessee, or solicited or advertised for business in Tennessee. None have bank accounts in Tennessee. All of the individual Defendants are engaged in the practice of medicine which is limited to caring for Florida patients in Florida.

---

[2]Dr. Winzenried visited Tennessee once to interview for a fellowship before he became a doctor. Dr. Meckstroth visited Tennessee three times, twice to vacation in the Tennessee mountains, and once to attend a continuing medical education conference at the University of Tennessee. Dr. Hussey visited Tennessee on one occasion more than ten years ago to attend a medical conference.

While the individual Partnership Defendants signed the Asset Purchase Agreement and the Partnership Agreement between AmSurg and ECN, the individual Partnership Defendants state the agreements were negotiated with AmSurg representatives in Florida. Closing on both agreements took place in Florida. Neither agreement imposed duties or responsibilities that would have required the individual Partnership Defendants to travel to, or perform services in, Tennessee. The individual Partnership Defendants dealt with AmSurg representatives in Florida and received no compensation from AmSurg, but instead were paid directly by ECN from its share of partnership profits.

Likewise, Defendant ECN has submitted evidence to suggest that, prior to its voluntary dissolution in January 2008, it had little, if any, contact with Tennessee. ECN was a Florida corporation with its only place of business in Naples, Florida. ECN was never authorized to conduct business in Tennessee, and never conducted or solicited business in Tennessee. ECN never owned any property in Tennessee. While ECN became a limited partner with AmSurg in the Center, AmSurg maintained an office and had representatives in Florida and the Center, which was the sole basis for the Partnership, was located in Florida.

Based upon the record before the Court, AmSurg has wholly failed to show that any of the Defendants had continuous and systematic contacts with Tennessee so as to justify general personal jurisdiction in this Court.

**B.  Specific Jurisdiction**

Unlike general jurisdiction, "[s]pecific jurisdiction 'subjects the defendant to suit in the forum state only on claims that arise out of or relate to defendant's contact with the forum.'" Fortis, 450 F.3d at 218 (citation omitted).  The exercise of specific jurisdiction over a non-resident defendant is valid only if it meets both the state long-arm statute and constitutional due process requirements.  Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000).

Tennessee's long-arm statute provides for jurisdiction to the full extent allowed under the due process clause relating to "the transaction of any business within the state." T.C.A. § 20-2-214. Section 20-2-214(c) also permits the exercise of personal jurisdiction over a defendant when it transacts business in the state through an "agent or personal representative." T.C.A. § 20-2-214(c).

The Sixth Circuit has set forth three criteria for determining whether specific jurisdiction may be exercised consistent with due process. Those criteria are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381-382 (6th Cir. 1968). The purposeful availment prong of the test is viewed by the Sixth Circuit "as 'essential' to a finding of personal jurisdiction," Intera Corp. v. Henderson, 428 F.3d 605 (6th Cir. 2005), and the question of whether a defendant availed itself of the privilege of acting in a state is determined by the defendant's actions and not the plaintiff's actions. Nationwide Mut. Ins. Co. v. TRYG Int'l Ins. Co., 91 F.3d 790, 795-96 (6th Cir. 1996).

In this case, AmSurg has not established any of the three factors just mentioned. AmSurg claims that the Defendants purposefully availed themselves of Tennessee law by virtue of entering into a Tennessee Limited Partnership which was to be governed by Tennessee law. AmSurg posits that "it is difficult to conceive how Defendants could have more directly 'purposefully availed' themselves of the 'benefits and protections' of Tennessee law in their contractual relationships with AmSurg."[3] (Docket Entry No. 18 at 12).

---

[3]AmSurg recognizes that Dr. Winzenried did not sign either the Partnership Agreement or Asset Purchase Agreement but claims that this Court can exercise jurisdiction over him based upon a conspiracy theory of personal jurisdiction. That argument is immaterial in light of the Court's conclusion that it has no jurisdiction over Defendant ECN or the individual Partnership Defendants.

8

It is true that through the instrumentality of a partnership, the individual partners may be said to have purposefully availed themselves of the privilege of conducting business in the state in which the partnership was formed because the partners invoke the benefits and protection of its laws to satisfy their personal economic desires. See, Intercontinental Leasing, Inc. v. Anderson, 410 F.2d 303, 310 (10th Cir. 1969). However, in this case, the Partnership Agreement is between Amsurg, as General Partner, and ECN, as Limited Partner. The individual Partnership Defendants who signed the agreement did so as shareholders of ECN. While the Court may have jurisdiction over ECN as the limited partner, the same may not necessarily be said about its shareholders since jurisdiction over shareholders of a corporation may not be predicated merely upon jurisdiction over the corporation, except to the extent that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Balance Dynamics Corp. v. Schmitt, Indus. Inc., 204 F.3d 683, 698 (6th Cir. 2000).

Under the facts of this case, the Court finds that the formation of a Tennessee partnership, governed by Tennessee law, is not dispositive on the issue of purposeful availment particularly since the Agreement itself says that all disputes relative to the Agreement are to resolved by binding arbitration in Fort Meyers, Florida and this remains so notwithstanding the Tennessee choice of law provision. The Supreme Court in Burger King Corp., 471 U.S. at 482 indicated that a contractual choice of law provision is merely one factor a court must consider in determining whether a party to the Agreement purposefully availed itself of the law of that forum. Other factors to be considered include prior negotiations, contemplated future consequences, the terms of the agreement and the parties' actual course of dealing. Bridgeport Music Inc. v. Still in the Water Pub., 327 F.3d 472, 482 (6th Cir. 2003). Here, the record shows that the Agreements were negotiated exclusively in Florida with Florida residents, the Agreements were performed exclusively in Florida, and the operation of the Center occurred in Florida. See, Spectrum Scan, LLC v. AGM California, 2007 WL 2258860

9

(6th Cir. 2007)(Kentucky did not have personal jurisdiction over defendants where negotiations relating to contracts did not take place in Kentucky, all in-person meetings occurred outside Kentucky, contracts did not require defendants to go to Kentucky to carry out responsibilities, and subject matter of contracts was in California, even though contracts contained Kentucky choice-of-law provisions); Calphalon, 228 F.3d at 723 ("even though [defendant] was on notice that the contract was to be governed by Ohio law, it did not make a deliberate affiliation with that state nor could it reasonably foresee possible litigation there").

Further, any alleged breach did not occur in Tennessee but instead arose from actions in Florida. The allegations are that Defendant Winzenried opened an endoscopy center in competition with AmSurg which the individual Partnership Defendants then joined. They then in turn allegedly lured other Center employees to join them. All of these events occurred in Florida.

Finally, while AmSurg, a Tennessee company, is alleged to have been damaged by Defendants' action, this Court cannot conclude that this is a substantial enough connection with the forum state to make the exercise of jurisdiction over the Defendants reasonable. Where, as here, a Plaintiff fails to satisfy both the "purposeful availment" and "arising from" requirement for specific personal jurisdiction, "an inference of reasonableness is not warranted[.]" Intera Corp. v. Henderson, 428 F.3d 605, 618 (6th Cir. 2005). In any event, Plaintiff has not shown that it would be reasonable to litigate in a Tennessee court a dispute with Florida doctors, who operated a Florida medical practice serving Florida patients and who then allegedly conspired to open a competing Florida medical center. This is particularly so since it appears virtually all of the relevant witnesses live and work in Florida. While Plaintiff certainly has an interest in obtaining any relief to which it may be entitled, there is no showing that such relief may not be had in Florida. See, id. (discussing factors to be considered in determining reasonableness). Indeed, it appears that it was the intention of the

10

parties that disputes about the Agreement were to be resolved through binding arbitration in Fort Meyers, Florida.[4]

In determining that dismissal for lack of personal jurisdiction is warranted, the Court recognizes that in its response AmSurg asserts the Court should allow discovery on the issue of personal jurisdiction. While the Court has discretion to allow discovery on the issue of personal jurisdiction, Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991), AmSurg has offered no persuasive reason for allowing it to engage in such discovery.[5] In opposing dismissal, AmSurg has offered nothing which even remotely suggests that the Court has personal jurisdiction over any of the Defendants in this case. It seems clear that Plaintiff, through its employees, would be aware of any contacts the Defendants may have had with Tennessee in relation to the Partnership or the running of the Center and that information would not require discovery. However, AmSurg presents no evidence from any such individuals and instead chooses to support its claim for jurisdiction by relying upon a Declaration from a Florida-based employee who wholly fails to state that any Defendants had any contact with Tennessee. The Court simply sees no basis for prolonging the dismissal of this action absent some suggestion that the Defendants actually had some sort of contact with Tennessee aside from entering into a Tennessee Limited Partnership.

---

[4]The Court notes that even if it had jurisdiction over all of the Defendants in this action, it would be inclined to transfer this case to Florida were it asked to do so by Defendants. It appears clear that transfer would be appropriate "[f]or the convenience of the parties and witnesses," and "in the interest of justice" under 28 U.S.C. § 1404(a) .

[5]AmSurg does assert that discovery is necessary to uncover facts relating to the alleged conspiracy. It does not explain, however, how discovery of facts relating to an alleged conspiracy among Florida doctors to open a competing Florida medical center will lead to any probative evidence about whether the Defendants had sufficient contacts with Tennessee so as to support either general or specific personal jurisdiction over the Defendants in this Court.

11

## IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 8) will be granted and this case will be dismissed without prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE